UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**NAVIGATORS INSURANCE COMPANY,** *et al.*     **CIVIL ACTION**

**VERSUS**     **No. 07-5244**

**AMERICAN INTERSTATE INSURANCE COMPANY**     **SECTION: I/4**


### ORDER AND REASONS

Before the Court is a motion for summary judgment[1] filed on behalf of defendant and counterclaimant, American Interstate Insurance Company ("American"), against plaintiffs and counterdefendants, Navigators Insurance Company and Liberty International Underwriters (collectively, "Excess Insurers"). For the following reasons, the motion is **GRANTED**, plaintiffs' complaint is **DISMISSED WITH PREJUDICE**, and defendant's counterclaim is **DISMISSED WITH PREJUDICE**.


*BACKGROUND*

On February 2, 2006, Luke Harrison ("Harrison"), an employee of Superior Offshore

---

[1] R. Doc. No. 7.

International, L.L.C., ("Superior"),[2] filed a complaint in this Court against Superior seeking to recover for personal injuries sustained when he allegedly slipped and fell while working as a commercial diver on September 4, 2003.[3] Superior was insured by American under a Worker's Compensation and Employer's Liability Insurance Policy ("Primary Policy") during the period beginning April 1, 2003, through April 1, 2004, encompassing the date on which Harrison alleges he was injured.[4] Superior was also insured on that date pursuant to a Bumbershoot Liability Policy ("Excess Policy") issued by Excess Insurers.[5]

On June 13, 2007, Harrison entered into a tender agreement in which he accepted a one-million-dollar payment from American and released American from any and all claims against Superior.[6] On July 5, 2007, Harrison and American revised the tender agreement to include a

---

[2] Superior was formerly known as Superior Diving Company, Inc. R. Doc. No. 7-11, mot. summ. j., ex. D-7, Tender Agreement ¶ 1.

[3] *Harrison v. Superior Diving Company, Inc.*, Civil Action No. 06-536, R. Doc. No. 1, compl. ¶¶ 1-7 (E.D. La. Feb. 2, 2006).

[4] R. Doc. No. 7-10, mot. summ. j., ex. D-6, Primary Policy. The Primary Policy has various endorsements including: (1) a Longshore and Harbor Workers' Compensation Act Coverage Endorsement, (2) an Outer Continental Shelf Lands Act Coverage Endorsement, and (3) a Maritime Coverage Endorsement. *Id.* at 10-11, 14-15. The endorsements have a limit of liability for "bodily injury by accident," *i.e.*, one-million dollars per accident. *Id.* at 1.

[5] R. Doc. No. 7-15, mot. summ. j., ex. D-11, Excess Policy. The Excess Policy provides: "This Policy is to indemnify the Assured in respect of the following . . . sums which the Assured shall become legally liable to pay . . . on account of . . . Personal injuries." *Id.* at 1.

[6] Tender Agreement ¶¶ 4-5. Specifically, the agreement provided:
> [American] has agreed to tender its $1 million policy limits. [Harrison] has agreed to accept that sum, and in return for such payment he hereby releases [American], its parent, subsidiaries, affiliates, contractors, subcontractors, employees, agents or representatives ("The Released Parties") from any and all claims arising during his employment with Superior for all time periods that [American] provided coverage for Superior, including but not limited to claims for maintenance and cure, tort damages, economic losses, pain and suffering, found, lost wages, loss of wage earning capacity, punitive damages, costs, penalties, attorney's fees, and any other claims or causes of action under state or federal law, past, present and future.

*Id.* ¶ 5.

-2-

paragraph stating that Harrison had not made a claim in his litigation against Superior for separate occurrences and that all of the damages related to the one occurrence of September 3-4, 2003.[7]  Further, to the extent there were any additional occurrences, Harrison, in the amended tender agreement, released American and Superior from any claims for such occurrences.[8]

On June 30, 2007, a mediation was held among Superior, Excess Insurers, and Harrison.[9] A settlement in the additional amount of $775,000[10] was reached during this mediation, of which $50,000 was for defense costs.[11]  Excess Insurers paid the settlement demand, but sent a memorandum of understanding to American stating their contention that they were entitled to recover that amount from American.[12]

On August 30, 2007, Excess Insurers filed a complaint in this Court against American seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201-2202 (2006).[13]  Excess Insurers are seeking a declaration of the obligations and responsibilities of American to Excess Insurers.[14] Excess Insurers contend that they paid sums on behalf of Superior that should have been paid by

---

[7] R. Doc. No. 7-12, mot. summ. j., ex. D-8, Amendment to the Tender Agreement ¶ 2.

[8] *Id.* ¶ 3.

[9] Compl. ¶ 33.

[10] This amount is in addition to the one-million-dollar payment to Harrison by American secured through the tender agreement.

[11] Compl., Excess Insurers' memorandum of understanding to American.

[12] *Id.*

[13] Compl.

[14] *Id.* prelim. statement.

American.[15]

## *LAW AND ANALYSIS*

**I.      Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c).[16] The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of

---

[15] *Id.* Specifically, Excess Insurers argue: (1) American failed to investigate whether Harrison was entitled to relief pursuant to the Jones Act or the Longshore and Harbor Workers Compensation Act, which prejudiced Excess Insurers and Superior; (2) American failed to timely defend Superior, resulting in an increase in the ultimate exposure of and cost for Superior and Excess Insurers; (3) American failed to exhaust the Primary Policy limits by paying for one accident because Harrison alleged more than one occurrence, which led to American having a continuing duty to defend and indemnify Superior; (4) $50,000 in defense costs were paid by Excess Insurers that should have been paid by American; and (5) American's failure to defend and indemnify Superior and its attempts to avoid defense costs constitute bad faith in violation of Louisiana Revised Statute § 22:1220 (2004). *Id.* ¶¶ 8-34.

[16] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout." Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment). The changes "are intended to be stylistic only," rather than substantive. *Id.*

material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor."  *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.   Discussion

Under Louisiana law[17]:

> "[T]he primary insurer does not owe a duty of care or even of good faith performance to the excess insurer of its insured."  Absent a viable theory of liability based on subrogation, [the excess insurer] cannot prevail against [the primary

---

[17] Because the Court's subject matter jurisdiction in this case is premised upon diversity of citizenship, state law applies to the substantive issues before the Court.  *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (*citing Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 822, 82 L. Ed. 1188, 1194 (1938)).  "In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state."  *Id.* (*quoting Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97, 61 S. Ct. 1021-22, 85 L. Ed. 1477, 1480-81 (1941)).  Both the Primary and Excess Policies were issued in Louisiana.  Because this action involves these insurance polices, Louisiana substantive law governs.  *See Am. Int'l Specialty Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003) ("Louisiana choice of law rules dictate[] that in this action involving the interpretation of insurance policies issued in Louisiana, Louisiana substantive law governs our decision."); *Ins. Co. of N. Am. v. W. of Eng. Shipowners Mut. Ins. Ass'n*, 890 F. Supp. 1302, 1306 (E.D. La. 1995) ("Louisiana law is the obviously applicable state law since the [insurance] policies were provided to a Louisiana insured in the State of Louisiana.").

>  insurer]. "[I]f the excess insurer is to recover from the primary insurer for acts which make the excess insurer's contract and liability more burdensome, it must do so by asserting the insured's rights after becoming subrogated to them or after acquiring them through assignment."

*Travelers Indem. Co. of Ill. v. W. Am. Specialized Transp. Servs., Inc.*, 409 F.3d 256, 260-61 (5th Cir. 2005) (footnotes omitted) (*quoting Great Sw. Fire Ins. Co. v. CNA Ins. Cos.*, 557 So. 2d 966, 971 (La. 1990)). Therefore, in order for American to be liable to Excess Insurers, a viable theory of subrogation or assignment[18] must exist. Excess Insurers claim that they have "paid a debt owed by [American]. Accordingly, reimbursement and/or subrogation is and should be available."[19]

"Subrogation is the substitution of one person to the rights of another." La. Civil Code Ann. art. 1825 (1987); *see A. Copeland Enters., Inc. v. Slidell Mem'l Hosp.*, 657 So. 2d 1292, 1296 (La. 1995) ("[S]ubrogation is the legal fiction established by law whereby an obligation, extinguished with regard to the original creditor by payment which he has received from a third person, . . . is regarded as substituting in favor of this third person who in essence steps into the shoes of the original debtor and is entitled to assert, in the measure of what he has paid, the rights and actions of the former creditor.").

"Louisiana law recognizes only conventional subrogation (by contract) and legal subrogation." *Inst. of London Underwriters v. First Horizon Ins. Co.*, 972 F.2d 125, 127 (5th Cir. 1992) ("[E]quitable subrogation does not exist in Louisiana"); *see* La. Civil Code Ann. arts. 1825, 1855 ("Performance rendered by a third person effects subrogation only when so provided

---

[18] "[T]here is no distinction between conventional subrogation by the obligee and assignment of rights." *Alvis v. CIT Group/Equip. Fin., Inc.*, 918 So. 2d 1177, 1184 (La. Ct. App. 2005) (*citing* La. Civil Code Ann. art. 1827 revision comment (a) (1987)).

[19] R. Doc. No. 14, mem. opp'n mot. summ. j. at 21.

by law or by agreement."). Therefore, in order for Excess Insurers to be able to recover against American, Excess Insurers must have been conventionally or legally subrogated to the rights of Superior.

Excess Insurers do not argue that conventional subrogation or assignment of rights exists.[20] However, Excess Insurers argue that they have paid a debt owed by American and that they should be reimbursed; the Court must therefore determine whether Excess Insurers can recover based on a legal-subrogation theory. Louisiana Civil Code article 1829(3) states that subrogation "takes place by operation of law . . . [i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment."[21] "Due to the exceptional nature of subrogation by operation of law, the right is strictly construed." *Martin v. La. Farm Bureau Cas. Ins. Co.*, 638 So. 2d 1067, 1068 (La. 1994).

Pursuant to article 1829(3), "the initial inquiry is whether the obligor is bound 'with . . . or for others,' and in order for an obligor to be bound, the obligation must be solidary and

---

[20] "'Conventional' subrogation occurs when an obligee receives performance from a third person and *in express terms* subrogates that person to the rights of the obligee, even without the obligor's consent." *Wilhite v. Schendle*, 92 F.3d 372, 376 (5th Cir. 1996). Excess Insurers do not point out, and the Court does not find, any contractual provision in the Excess Policy that would subrogate Excess Insurers to the rights of Superior.

[21] The entire article states:
> Subrogation takes place by operation of law:
> (1) In favor of an obligee who pays another obligee whose right is preferred to his because of a privilege, pledge, mortgage, or security interest;
> (2) In favor of a purchaser of movable or immovable property who uses the purchase money to pay creditors holding any privilege, pledge, mortgage, or security interest on the property;
> (3) In favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment;
> (4) In favor of a successor who pays estate debts with his own funds; and
> (5) In the other cases provided by law.

La. Civil Code Ann. art. 1829 (1987 & Supp. 2007). The only subsection applicable in this case is (3) as Excess Insurers argue that they paid a debt for American, *i.e.*, they are obligors who paid a debt for others. Mem. opp'n at 21-23.

indivisible." *Copeland Enters.*, 657 So. 2d at 1297. "An obligation is solidary among debtors when they are obliged to the same thing, so that either may be compelled to perform the whole obligation, and payment by one exonerates the other." *Martin*, 638 So. 2d at 1069. Excess Insurers, as Superior's secondary insurers, and American, as Superior's primary insurer, were not obliged to perform the same thing for Superior and their obligations were not, therefore, solidary. The Primary Policy and Excess Policy required the insurers to perform separate and independent duties to Superior. Without a valid theory of subrogation,[22] Excess Insurers have no legal right that is enforceable against American.[23]

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by defendant[24] is **GRANTED** and plaintiffs' complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendant's counterclaim is **DISMISSED WITH**

---

[22] The only cases Excess Insurers cite for the proposition that subrogation exists are not on point. *See* mem. opp'n at 21-23. First, Excess Insurers cite *Mutual Fire, Marine & Inland Insurance Co. v. Electro Corp.*, 461 So. 2d 410 (La. Ct. App. 1984), for the statement that they "should not be forced to pay a debt for which another insurer . . . is liable." Mem. opp'n at 21 & n.31. However, *Mutual Fire* is a case regarding a res judicata determination; further, pursuant to the insurance policies in that case, the insurers became subrogated to the rights of the insured. 461 So. 2d at 411. Excess Insurers, alternatively, have not become subgroated to the rights of Superior.

Next, Excess Insurers cite Louisiana Civil Code article 2299, which states that "[a] person who has received payment or a thing not owed to him is bound to restore it to the person from whom he received it." La. Civil Code Ann. art. 2299 (1997). However, American did not receive a payment from Excess Insurers; therefore, this article is inapplicable.

Finally, Excess Insurers cite *DeVillier v. Highland Insurance Co.,* 389 So. 2d 1133 (La. Ct. App. 1980), and *Prudential Insurance Company of America v. Harris*, 748 F. Supp. 445, 447 (M.D. La. 1990), as evidence of Louisiana courts allowing an insurer to recover after paying a debt it did not owe. However, in each of those cases, the court allowed insurers to recover when they mistakenly paid policy proceeds that were not due. Excess Insurers do not allege, and the facts do not show, that they made the settlement payment to Superior by mistake.

[23] The Court need not address whether Harrison made a claim against Superior for multiple occurrences (obligating American to continue defending Superior) because Excess Insurers do not have *any* legal right against American without a valid subrogation, which has not be proven here.

[24] R. Doc. No. 7.

**PREJUDICE**.[25]

<span style="margin-left:2em">New Orleans, Louisiana, January __8th__, 2008.</span>

_____<br>
**LANCE M. AFRICK**<br>
**UNITED STATES DISTRICT JUDGE**

---

[25] American's counterclaim seeks for the Court to assess penalties, costs, and attorney's fees against Excess Insurers. *See* R. Doc. No. 6, answer and counterclaim at 10-12.
> [F]ederal courts possess inherent power to assess attorney's fees and litigation costs when the losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." In this class of cases, the underlying rationale of "fee shifting" is punitive. The essential element in triggering the award of fees is therefore the existence of "bad faith" on the part of the unsuccessful litigant.
>
> The standards for bad faith are necessarily stringent. A party should not be penalized for maintaining an aggressive litigation posture.

*Batson v. Neal Spelce Assocs., Inc.*, 805 F.2d 546, 550 (5th Cir. 1986). The Court does not find evidence that Excess Insurers filed the lawsuit in bad faith and it will not, therefore, assess bad-faith penalties against them.